## Case No. 1,724.

BOWEN et al. v. KENDALL.

[Brunner, Col. Cas. 704;[1] 23 Law Rep. 538.]

Circuit Court, D. Massachusetts. 1860.

REMOVAL OF CAUSE—EFFECT ON INJUNCTION—ACCOUNTING TO CHARGE MORTGAGEE WITH USURY—MORTGAGE—POWER OF SALE IN.

1. On the removal of a cause an injunction granted by the state court falls; the motion for an injunction must be renewed in the circuit court.

2. A mortgagee will not be required to account, that he may be charged with usury.

3. A power in a mortgage to sell the mortgaged property is a matter of contract and will not be overthrown by the court.

In equity. The bill in this case [by Simon Bowen] was brought in the supreme court of Massachusetts for Bristol county, in September last, and an injunction was granted by that court to restrain the defendant from selling certain real estate situated in Attleborough, particularly described in a certain mortgage made by Hervey M. Richards, to Benjamin Hoppin, to secure the payment of twenty-five thousand dollars. The defendant being a citizen of Rhode Island, the suit, upon his petition, was removed from the state court to the United States circuit court to be entered here on the next May term, and the supreme court thereupon, according to the act of congress,[2] in such case made and provided, could proceed no further. Taking advantage of this state of affairs, the defendant gave notice, and was proceeding to sell the real estate this day, when the bill in equity and transcript of proceedings in the state court were filed in this court, and an application made for an injunction to restrain him from such act. It was suggested to the court here: 1. That this court could not proceed because the cause was not to be entered here until the coming May term. 2. That this court could not grant an injunction because they had not ordered sufficient notice to the adverse party. 3. That the court could not do so without fully inquiring

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[2] [From 23 Law Rep. 538:] The act referred to is the act of 1789, c. 20, § 12 (1 Stat. 79). It provides "that if a suit be commenced in any state court against an alien, or by a citizen of the state in which the suit is brought, against a citizen of another state, and the matter in dispute exceeds the aforesaid sum or value of five hundred dollars, exclusive of costs, to be made to appear to the satisfaction of the court; and the defendant shall, at the time of entering his appearance in such state court, file a petition for the removal of the cause for trial into the next circuit court, to be held in the district where the suit is pending, * * * and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of said process against him, * * * it shall then be the duty of the state court to accept the surety, and proceed no further in the cause; and the said copies being entered as aforesaid in such court of the United States, the court shall then proceed in the same manner as if it had been brought there by original process."

into all the facts. [An injunction was granted, but subsequently dissolved.]

Ellis Ames, and B. Sanford, for petitioners.
B. R. Curtis, for respondent.

SPRAGUE, District Judge, held, that in a pressing case like the present, he should deem the written notice given by the plaintiffs to the defendant of this application, coupled with the evidence that it was well understood by the defendant, as sufficient; that he should grant the injunction at once, inasmuch as the supreme court of the state had already done so, and that injunction had not been judicially dissolved; that he was not prepared to say that the defendant would not be punishable by the state court for a contempt, if he proceeded to violate their injunction. But as it seemed to be understood that the supreme court of the state would proceed no further, this court would forthwith grant an injunction to restrain the sale. Whether the respondent would be liable to an attachment, should he proceed to make the sale before the injunction could be regularly served on him, it being shown that he had notice of this application, he had no occasion now to determine.

Injunction issued.

The counsel for the defendant, on a subsequent day, moved that the injunction be dissolved. 1. Because no sufficient notice was given to the adverse party before this injunction was granted. 2. Because this court has no power to act in the premises. No bill in equity has been properly entered, or can be properly entered in this court before the next May term. The bill in the state court, where the injunction was first granted, was virtually a dead letter after the removal from that court, and the injunction fell with it; and both are inoperative until the next May term of this court, when the bill could only be properly entered here, and a new injunction could not be granted here until that time, and the injunction of the state court was in fact dissolved when the cause was taken from that court. 3. There were no merits in the plaintiffs' bill, and an injunction was not necessary.

SPRAGUE, District Judge. "It could not have been the intention of congress to allow a party to dissolve an injunction at his pleasure (no matter how important it was), simply by removing the case into a court of the United States."

Mr. Curtis. "Undoubtedly congress did not intend to do it; but my ground is that they have done it, as they have done a great many other things which they did not at the time intend to do. I think Judge McLean in Ohio has so decided."

SPRAGUE, District Judge. "I will hear you first upon the merits."

An affidavit of the defendant was then read to show that the defendant was rightfully proceeding to sell under a power of

sale mortgage, which was good and valid, and in his hands as an innocent purchaser, and that the plaintiffs had directly, positively, and repeatedly, in writing, recognized it, and admitted its validity, and thereupon defendant asks this court to dissolve this injunction. That it would not be equitable for persons who had caused another to purchase, under an appearance that all was right, to turn around and repudiate the sale. The plaintiff now alleges usury as a corruption of the contract between the maker and the original mortgagee. If this were so, it is contended that a court of equity will not. or ought not, to stop a sale of the property under the mortgage, unless the balance admitted to be due is brought into court or tendered. More than that, the party who sets up usury and flies to a court of equity, must come with clean hands. He must bring in the money actually advanced, with interest, or show his readiness and ability to refund it. That is not equity which permits a man to hold all he gets, and take back all he gave. But this contract was made in Rhode Island, and by the law of that state it must be construed, and by the laws of that state there is no penalty which can here be enforced. At any rate, let the contract be as it may, no court of equity will enforce a triple penalty, nor can it be enforced, even at law, before usury has actually been paid.

The counsel for plaintiffs contended: 1. That the defendant was not proceeding to sell in the manner pointed out in the mortgage. 2. That the state courts where the bill was originally filed can, by law, proceed no further after the removal of the cause therefrom. But by a petition now filed here in the nature of a bill of equity, whereby all the facts stated in the bill are adopted, and the record of the state court produced, the plaintiffs now make themselves plaintiffs here, and are in the same position as a plaintiff who files his bill at rules. or in vacation. In England in cases of extreme necessity, waste, or emergency, injunctions have been granted on a petition before any bill had been filed. This is a suit in court. of which this court will take cognizance. 3. The notice was given, and the party actually was represented here, and his representative made suggestions to the court, and afterward said he would withdraw, but not until he had been heard and the decision was made against him. 4. As to the merits, the plaintiffs are ready to meet the questions when answer is made. The case cannot be tried on a preliminary motion. It would be a practical demurrer, which would precipitate a hearing before evidence taken. The injunction has been granted. The time for hearing on that question has gone by. The defendant must now put in his answer before he asks for its disposition.

On the merits our answer is: 1. That Kendall, the defendant, had knowledge of all the facts touching usury. 2. That whether he knew it or not, the law is peremptory, and gives the plaintiffs a right to deduct the whole amount of usury, and triple the amount; and usury can be set up against even an innocent purchaser. In this case the defendant took the note overdue.

SPRAGUE, District Judge. The original injunction in this case was ordered by the supreme judicial court of this state October 24th, and the case was then removed from the state court to be entered at the next term of the United States circuit court, to be held in May, 1861. Thereupon the bill of complaint and transcript of the proceedings in the state court were filed in this court. together with an application for an injunction; and on the 16th instant an injunction was granted here. This was done on the ground that there existed a pressing emergency to prevent a sale which was to have taken place that very day. It seemed to the court at the time that the urgency of the case required their interference, and that, too, without delay. But the question is now presented, had this court power to grant that injunction? Such power has been denied by the counsel. This case had been removed from the state court. That court could proceed no further in the suit, and the defendant was not bound to enter the case here until May next. It is contended that thereby the injunction of the state court became void, and that the defendant could act without regard to it. This court does not undertake to decide how far that is true, or how far the defendant might become liable as for a contempt of court if he should violate the injunction before it was in some other way dissolved. Suppose the injunction granted by the state court had been to restrain a man from selling a negotiable note fraudulently obtained, could a party holding the note have his case removed into the United States court, and then sell the note in five minutes after he had caused the action to be removed? This court feels certain that congress never intended to produce such a result. There is. however, great difficulty in so construing the act of congress. It is highly important that the cause should come within the jurisdiction of this court immediately on its removal from the state court; and yet such is the frame of the statute of the United States as to render it difficult, by any fair construction of its language, to sustain such immediate jurisdiction. This is the first time the question has been presented, and it need not now be decided; for by the view which I take of the case, it may be otherwise disposed of. When the application for this injunction was made, it was represented that delay would be ruinous, and the only purpose of the court in granting the injunction so promptly was to hold the property just as it was until further examination could be had. And I shall consider the question whether there ought to be an injunction upon the respondent in

the same manner as if the application therefor had now been heard for the first time.

· The plaintiffs in their bill ask for an account, and to be allowed to redeem. For ·what is the respondent to account? Not for rents and profits, for he has never been in possession. It is indeed alleged that some ·payments have been made to his assignor, ·the original creditor, but these payments are indorsed on the notes, and were well known to the plaintiffs. The only ground urged for an account is, that credit should therein be given for a statute penalty for usury taken by the original creditor. It is not set forth .in the bill at what place the contract was made, or ·where it was to be performed. It is not alleged that the defendant or his assignor has been guilty of a breach of any law of· the state of Rhode Island or of Massachusetts. It is claimed that three times the ·amount of usury said to have been paid ·should be deducted under the law of Massachusetts. The real estate mortgage is in Massachusetts, but from the slight proof we have, it is probable that the contract was made, and to be performed in Rhode Island, and if so, then the laws of Rhode Island would govern it. The defendant, under oath, expressly denies all knowledge of any usury, and declares himself to be an innocent purchaser for a full consideration, and no one contends that he has personally received usury. Now this court, sitting as a court of equity, would not require from the defend-·ant an account in order that he should ·charge himself with such a penalty. In this case the defendant ·had nothing to do with the alleged usury, or with any payment or receipt of it, and it is much better known to the insolvent debtor what sums have been involved in his dealings with the original mortgagee.

It is said that the plaintiffs wish to redeem and prevent the sale under the power contained in the mortgage, and allege that the defendant is not disposed to execute that power fairly, and with due discretion. But if the plaintiffs wish to redeem, they should bring their money into court, or ·tender it, or at least make it certain that the defendant can have it. Here no money is tendered; no security offered. If a deprecia-. tion of the property takes place, the whole loss may fall on the defendant, and he has .already offered to make a discount if the plaintiff will redeem, and to give an extension of time if security is given for the payment of the debt. Is it reasonable, then, to . place the holder of the mortgage in a condi-. tion to lose a portion of his debt by causing delay, when the property is yielding but . little? This ground cannot warrant the injunction.

As to the conduct of the sale, we need only . say that the power of sale is a matter of con-· tract, and·should not be overthrown by the court. If the defendant exercises ·his right, ; and executes the power of sale, he is re-

sponsible for good faith, and must use proper care and discretion in the conduct of it. If he is guilty of a breach of trust, he must answer for that hereafter. His pecuniary ability is unquestioned, and the plaintiffs do not contend that there is any want of means to answer for his good conduct. It is said that the advertisements of the sale are insufficient. But they seem to be all that the contract between the parties has required. And if the plaintiffs consider the three newspapers which contain the notice of sale insufficient, they can easily advertise in other papers, and describe the property as fully as they please. Under the terms of this contract the court will not order the creditor to divide up the mortgaged estate, or to sell it by retail, or in parcels. The defendant is bound to use good faith, and to endeavor to sell the estate for the most it will bring. He acts on his own responsibility, and the court will not now express either approbation or disapprobation of the course he proposes to pursue. He acts under his contract, and must do his duty to all concerned. I shall order the injunction to be dissolved.